Battle, J.
 

 This case was argued before us at the last iterm of the court, but as the questions presented in it were
 
 *80
 
 found to be novel, as well as important, we deemed it proper to take time for deliberation, and to request another argument. It has accordingly been again discussed, with much zeal and ability, by the counsel on both sides, and we are-now prepared to state the reasons which have conducted us¡ to the conclusion at which we have arrived.
 

 The indictment against the defendant is founded upon an ordinance of the Convention of 1865, which was ratified on, the 18th day of October in that year, and is entitled, “ An ordinance to provide revenue for the year eighteen hundred and sixty-five.” By the 19th section a tax is imposed of one-half of one
 
 per cent,
 
 on the amount of all purchases, made in or out of the State, whether for cash or on a credit,, by any merchant, &c., buying or selling goods, wares or-merchandize of whatever name or description;
 
 Provided, however,
 
 that purchases of cotton, tobacco, turpentine, rosin, tar and spirituous liquors, wine and cordials, shall not be-included in the amount of purchases on which the tax laid by this section is to be estimated.” This tax, by the first section, was to apply and operate during the twelve months-next preceding the first of January, 1866. By the 21st section it is provided that “ to ascertain the amount of taxes due from any person, company, firm or corporation, the-sheriff or his deputy is hereby authorized and empowered, to examine on oath any person, &c., and in case any such person shall refuse fully to answer on oath such person shall be deemed guilty of a misdemeanor, and said sheriff’ or deputy sheriff shall commit him to prison unless he shall enter-into recognizance, with good security in such sum as shall be required, to appear before the Superior Court -of law of his county, at its next term, to answer the charge, and on conviction he shall be fined or imprisoned, at the discretion of the court.” The defendant, who was a citizen of the-county of Carteret, and had carried on the business of a merchant in that county by buying and selling goods, wares-.
 
 *81
 
 and merchandize during the whole of the year 1865, refused to take the oath required by the ordinance, but offered to swear to the amount of his purchases
 
 after the 18th day of
 
 October, 1865, that being' the day on which the ordinance was ratified. To this proposition the sheriff refused to accede, and proceeded to bind him over to the next Superior Court of- law for the county, at which court he was indicted, tried and convicted for a violation of the ordinance; and from the judgment then pronounced against him, he has appealed to this court.
 

 On the argument here the counsel for the defendant contends that the ordinance of the Convention, under which his client was convicted, is unconstitutional and void:
 

 1. Because it is an “
 
 ex post facto
 
 law,” and therefore prohibited by the Constitution of the United States. Art. I, sec. 10, ch. 1. It becomes necessary then to enquire what is such a law ? That question was answered and settled by the Supreme Court of the United States in the case of
 
 Calder
 
 v. Bull, 3 Dallas, 386, in which it was defined to be as follows : “ 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action. 2d. Every law that aggravates a crime or makes it greater than it was before it was committed. 3d. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when it was committed. 4th. Every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offence, in order to convict the offender.” This definition, thus given by
 
 Judge Chase
 
 in pronouncing the opinion of the court, has been universally accepted and approved, and it shows that an
 
 ex post facto
 
 law, in the sense in which it is used in the Constitution, applies to matters of a criminal nature, and to them only. 1 Kent, 409; 3 Story on the Con., 212;
 
 State
 
 v.
 
 Bond,
 
 4 Jon., 9
 
 *82
 
 The 24th section of our Bill of Rights has received a similar construction.
 
 Dickinson
 
 v.
 
 Dickinson,
 
 3 Mur., 327. Tried by the test of this definition, the ordinance of the Convention is not in the slightest degree obnoxious to censure. It does not declare criminal any action done by the defendant before it was passed; nor does it aggravate the criminality of any act which he had previously committed; nor does it change, or increase, the punishment for any alleged crime, nor change the rules of evidence to make a conviction easier. On the contrary, it recognizes the defendant as having been engaged in a lawful business, and upon that business proposes to lay a tax. What it declares to be a crime is something which he may do or refuse to do after-wards, and in respect to such criminality it is altogether prospective. If he were not bound to render an account •on oath of his purchases, as a merchant, prior to the passage of the ordinance, it must therefore be for some other cause than that the ordinance is
 
 ex post facto.
 

 2. Upon the supposition that his first objection might not be sustained, the counsel contends, in the second place, that if the ordinance be not
 
 ex post facto,
 
 it is
 
 retrospective,
 
 and therefore void, as being- against the spirit, if not the letter, of the Constitution. For this position the counsel has referred-to and relies upon what is said in “Dwarris on Statutes.” It is a general rule, say the books, that no statute is to have retrospect beyond the time of its commencement, for the rule and law of parliament is,
 
 nova constitutio fuluris formara clehet impornu non prceteritis.
 
 And not only is it the doctrine of the English law that a statute is not to have a retrospective effect, but it is also founded on the principles of general jurisprudence. A retrospective statute would partake in its character of an
 
 ex post facto
 
 law as to all cases of crimes and penalties, and in matters relating to contracts or property, would violate every sound principle. Dwar. on Stat. 680, 681, (9 Law Lib., 35.) Whenever a retrospec
 
 *83
 
 five statute applies to crimes and penalties, it is an
 
 ex post facto
 
 law, and as such is prohibited by the Constitution of the United States, not only to the States, as we have already seen, but to Congress. Art. 1, sec. 9, ch. 3. The omission of any such prohibition in the Constitution of the United States, and also of the State, is a strong argument to show that retrospective laws, merely as such, were not intended to be forbidden. It furnishes an instance for the application of the maxim
 
 expressio unius est exclusio alterius.
 
 We know that retrospective statutes have been enforced in our courts, of which the case of the
 
 State
 
 v.
 
 Pool,
 
 5 Ire, 105, furnishes a striking example. In that case it was decided that a bond given by a sheriff for the discharge of his official duties, though void according to the previous decisions of the Supreme Court, because those who had accepted it had, at the time, no legal authority to do so, yet will become valid
 
 ab initio
 
 from a subsequent act of the Legislature, declaring that such bonds should be considered as having been legally delivered. And this consequence will follow, although the act of Assembly was passed not only subsequently to the institution of the action, but also to the determination in the court below, and the appeal to the Supreme Court. In the argument of the case, it has been contended that the act ought to be construed .so as to extend only to bonds subsequently executed, but in delivering the opinion of the court, it was said that though statutes ought not to be adjudged retrospective except from necessity, yet the words “have been taken,” as applied to the bonds of sheriffs, could not be so interpreted as to render them inoperative. It follows from this that whenever the Legislature uses language which is expressly, or by necessary construction retrospective, effect must be given to it by the court, unless there be some other ground upon which it must.be declared void. There can be no other ground except its repugnancy to the Constitution of the United States or of the State, -for
 
 *84
 
 it was well said by the learned counsel who argued for the State, that there can be but two questions raised upon an act of the Legislature. First, is it constitutional ? Second, what is its proper construction ? In connection with this, the language of the Judges of the Supreme Court of Massachusetts, in reply to questions propounded to them by the Plouse of Representatives of that State, is of grave import, and deserves the serious consideration of every citizen of the country: “ The Constitution is law, the people having-been the legislators, and the several statutes of the commonwealth, enacted pursuant to the Constitution, are law, the Senators and Representatives being- the legislators. But the provisions of the Constitution, and of every statute, are the intentions of the Legislature thereby manifested. These intentions are to be ascertained by reasonable construction, resulting- from the application of correct maxims generally acknowledged and received.” 7 Mass. Rep., 524.
 

 3. The ordinance of the Convention, upon which we are commenting, uses no doubtful or equivocal language. It expressly requires every merchant, &c., to give an account, on oath, of all his purchases in or out of the State during the year 1865. It was passed and ratified, as we have seen, on the 18th day of October in that year. An important question is then presented, whether the Covention had the power to lay a tax upon business done prior to the time when the ordinance was adopted. This question is one of very great importance both to the State and its citizens. In its discussion, it will aid us to consider, for a moment, the extent of the power possessed by the State to levy taxes upon its inhabitants. “The taxing power is one of the highest and most important attributes of sovereignty. It is essential to the establishment and continued existence of the government. Without it, all political institutions would be dissolved, the social fabric would be broken up, and civilization would relapse into barbarism.”
 
 State
 
 v.
 
 Petway,
 
 2
 
 *85
 
 Jon. Eq., 405. “ The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the governernment may choose to carry it. The only security against the abuse of this power is found in the structure of the government. In imposing a tax, the government acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation. The people of a State, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of the government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the Legislature, and the influence of the constituents over their representatives, to guard them against its abuse.”
 
 McCullock
 
 v.
 
 State of Maryland,
 
 4 Wheat., 428. See also
 
 Providence Bank
 
 v.
 
 Billings,
 
 2 Peters, 514, at pp. 561, 563.
 

 Before North Carolina entered into the Federal Union she possessed, as an independent and sovereign State, this unlimited power of taxation, but by adopting the Constitution of the United States, and becoming a member of the Union, she surrendered a portion of this sovereign power, but only such portion as was necessary to enable the general government to carry on and accomplish the purposes for which it was established as a great nation. The taxing power of the State is therefore now restricted, and the extent of this restriction is very well expressed in the case of
 
 Nathan
 
 v.
 
 The State of Louisiana,
 
 How., 73: “The taxing, power of a State is one of its attributes of sovereignty, and where there has been no compact with the Federal government, or cession of jurisdiction for the purposes specified in the Constitution, this power reaches all the property and business within the State which are not properly the means of the general government, and as laid down by this court it
 
 *86
 
 may be exercised at the discretion of the State. The only restraint is the responsibility of the members of the Legislature to their constituents.” See also
 
 The People
 
 v.
 
 Mayor of Brooklyn,
 
 decided in the Court of Appeals of New York, 4 Comst., 417.
 

 With this large and essential power of taxation unrestrained, except where it may come in conflict with the-Constitution of the United States, with a well established right to pass a retrospective law which is not in its nature-criminal, we can see nothing to prevent the people from taxing themselves, either through a Convention or a Legislature, in respect to property owned or a business followed anterior to the passage of the ordinance or the statute.— The counsel for the State has referred us to several acts of Coi^gress which have such a retrospective effect in taxing income, &c. See 12 Stat. at Large, pp. 309, 311, 445 and 472. Whether this retrospection could go back beyond the current year it is unnecessary for us to decide. The ordinance expressly confines the taxation to the year, which is-the usual manner of providing for the 'laying and collecting taxes in this State; for though a revenue law may continue in operation for a longer period than one year, the tax: lists are to be made out and the taxes themselves collected, annually.
 

 4. We will notice here the objection which was urged in the case of
 
 Murchison
 
 v.
 
 McNeill,
 
 1 Win., 220, to a law that-imposed a tax upon the profits of a factory commencing at a time anterior to the passage of the act. It was contended by the able counsel who argued that case for the tax payer, that the law was unconstitutional because the impost was-in effect a capitation tax, and as such was not imposed in the manner prescribed by the Constitution of the State,, which declares that “ capitation tax shall be equal throughout the State upon all individuals subject to the same.” See-Amendments, Art. 4, sec. 3, ch. 1. “ A capitation tax is (as-
 
 *87
 
 we said in
 
 Gardner
 
 v.
 
 Hall, ante,
 
 21,) one upon the person simply, without any reference to his property real or personal, or to any business in which he may be engaged, or to* any employment which he may follow. It is rightfully imposed, because of the protection which the government, affords to the person independently of the connection or relation of the person to anything else. Every kind of tax must be paid either directly or indirectly by a person, but if he pay it in consequence of his ownership of property, or of a license to follow a profession or trade, or of making profits by the use of money or other thing, or of a privilege granted to him either in writing or orally by the State, or by the permission of the State either expressed or implied, the impost is not a capitation tax: that is, it is not a tax upon his poll and head simply.” It is manifest that the#tax complained of by the defendant in this case is a tax upon his business as a merchant, and not a tax upon his head, in the sense in which a capitation tax is used in the Constitution. The requisition upon him to give an account upon oath of the amount of his purchases during the year, is for •the purpose solely of ascertaining what amount of tax ought to be imposed upon him as a merchant. This requisition, if our reasoning be correct, the State had a right to make, and he ought not to have refused.
 

 5. The last objection urged on the part of the defendant-is, that during a considerable part of the year 1865 the county in which he resided and was doing business was occupied by the Federal forces, in the prosecution of a war against the State of North Carolina; that he was carrying on his trade as a merchant under a license from an agent of the Treasury Department of the United States, and had paid taxes,therefor both to the military and civil authorities of that government; that after that arrangement was discontinued, in the Month of May, he continued to trade under' his license, and had paid the internal revenue tax imposed
 
 *88
 
 by an act of the Congress of the United States; that there were no civil officers in his county in the exercise of their functions prior to the organization of the Provisional Government in the State, and that up to that time the town of Beaufort, where he was trading, was in the possession of the Federal forces. Under these circumstances it is contended that he was not liable to pay any tax to the State upon his business prior to the date of the ordinance. In support of this objection the counsel relies upon two grounds. He insists, first, that the occupation of the town of Beaufort was an occupation by a public enemy, and that for the time of its continuance he cannot now be made liable to pay taxes for business which he carried on while under the dominion of the enemy; secondly, he contends that he was a licensee of the Federal Government, and as such supplied the army and the country within the Federal lines with provisions, &c., and that to tax his business would be to tax the means employed in part by the United States for the suppression of the rebellion.
 

 In support of his first position under this objection the counsel relies on the case of the
 
 United States
 
 v. Rice, 4 Wheat., 246, (4 Curtis, 391.) During the war of 1812 the British captured the port of Castine, in the State of Maine, and held possession of, and exercised complete dominion over it, until the treaty of peace in 1815, when it was restored to the United States. During its occupation by the enemy goods were imported into it, which, after the war, were held not to be liable to the duties imposed by the United States’ revenue laws. Such goods, at the time of their importation, were not
 
 imported
 
 into the United States, and hence, upon the proper construction of its revenue laws, they were held not to be liable to pay duties. The sole question in the case was (as was correctly said by the counsel for the State) one of
 
 construction
 
 only, and cannot be used as an authority for any other purpose. It does not decide,
 
 *89
 
 or pretend to decide, that after the territory was restored to the United States in 1815, the State of Maine might not have taxed the property and business of its inhabitants during its occupation by the British, in the same manner as it taxed the other citizens of the State. But, admitting, for the sake of argument, that the decision is otherwise, then we say that the case is not at all the same in principle with the one before us. To make it so is to take for granted that North Carolina had a right in 1861 to secede from the United States, and thereby become an independent nation; for in such case, it must be admitted that the capture of a portion of her territory in the war which ensued would have been a conquest by a foreign enemy. But such right of secession was repudiated by the first ordinance of the Convention of 1865, and the ordinance of secession in 1861 was declared to have been at all times null and void.. The capture of Beaufort by the military force of the United States was not therefore the conquest by a foreign enemy of the territory of the State of North Carolina, but merely the suppression of the rebellion in that part of’ the State, and when after-wards the State was rehabilitated, its loyal government was restored to all its former powers, including the power of taxation, over all its inhabitants in every part of its territory. This view is fully sustained by the opinion of Judge Sprague in the case of
 
 The Amy
 
 WarbecJc, before the United States District Court of Massachusetts, and by that of Judge Nelson, of the Supreme Court of the United States,
 
 in the matter of Jonas Egan,
 
 on a writ of
 
 habeas corpus.
 

 The second position under the last objection is equally untenable. The defendant was certainly not an
 
 officer
 
 of the United States. He did not hold any commission under that government, nor receive from it any pay by way of salary or otherwise. He was merely acting under a license from the authorities of the general government to trade on his own account, and for his own profit, with the officers
 
 *90
 
 and soldiers of the army, and with the people of the surrounding country. For this privilege he was indeed required to pay a
 
 tax
 
 to the United States, but that did not prevent his liability to pay another tax to the State.
 
 MacCulloch
 
 v.
 
 State of Maryland, ubi supra.
 
 The same principle has, we understand, been decided by the Supreme Court of the United States in what are called, The Liquor and Lottery cases. If the defendant can be considered in any proper sense an agent of the general government, still his emoluments as such are liable to State taxation. He cannot be regarded in a better light than a Clerk in a Post Office, and it has been decided by the Supreme Court of Massachusetts that the income of such a clerk, derived from his employment as such, is taxable by the State.
 
 Melcher
 
 v.
 
 City of
 
 Boston, 9 Met., 73. That case was distinguished from
 
 Dobbins v. Commissioners of Erie,
 
 16 Pet., 435, in which a tax upon the “ office ” of a Captain in. the United States navy, by a statute of Pennsylvania, was held to be contrary to the Federal Constitution. The Massachusetts court intimate that the decision in
 
 Dobbins' case
 
 might have been different had the tax been imposed upon the “income,” instead of the “ office.” However that may be, it is certain that the present defendant cannot claim any immunity from State taxation on the ground of his having been an officer t f e United States.
 

 The decision of the court below is believed to be ’ it, and must be affirmed.-
 

 Per Curiam. There is no erro
 

 Memorandum.
 
 — The principles involved in the above case were
 
 :
 
 in before the court at this term in
 
 The State
 
 v. McNamara, from
 
 Washington
 
 and
 
 The State
 
 v.
 
 Blagqe and Soper,
 
 from
 
 Craven.
 
 In the former case, which was tried before his Honor,
 
 Warren, J.,
 
 at Pall Term, I860, the defendant offered to account for taxables from the time of the establishment of the Provisional Government in the State; in the latter, tried before his Honor,
 
 Tames, J.,
 
 at Pall Term, 1866, the defendant declined to account at all. In each case judgment in the court below was against the defendant; and in this court that judgment was affirmed, f Or the reasons given in the case above.
 

 In all of the cases Writs-of-error have been allowed, returnable, into tins Supreme Court of the United States.