John Gill and Charles D. Fisher *vs.* Samuel Cacy, Weigher General of Grain.

*Construction of the Act of* 1872, *ch.* 244, *sec.* 6—*Meaning of the words* "*through elevators.*"

By the sixth section of the Act of 1872, ch. 244, the Weigher General of grain is required to have weighed all grain carried to the City of Baltimore for sale, except grain carried to said city on wagons, carts, railroad cars, or "through elevators" Certain grain which arrived in Baltimore City, by water, was purchased by the appellants, and the vessels in which it was brought were ordered by them to unload it at the grain elevators at Locust Point or Canton. The grain was taken out of the vessels by the elevator machinery, and deposited in the elevator where it was weighed by an employé of the elevator company, under the immediate superintendence and direction of an assistant weigher of grain, stationed there by the Weigher General for the purpose of superintending and directing said weighing. The grain was so weighed under a claim of right and duty on the part of the Weigher General, to weigh the same under the Act of 1872, ch. 244, but said right and duty were denied by the appellants, who claimed that said grain was exempted from being so weighed, by section 6, of said Act of 1872, ch. 244. Held :

1st. That the object and general purpose of the Act of 1872, ch. 244, authorizing the appointment of weighers of grain in and for the City of Baltimore, was to provide a competent and suitable officer to inspect grain sold in the City of Baltimore, and to ascertain with fairness and accuracy the true quantity sold, by weighing and measuring; to establish a system by which the Legislature supposed the farmer would more honestly receive, and the merchant more honestly pay, exactly for what was sold and bought.

2nd. That the Legislature clearly intended to except from the operation of the Act of 1872, ch. 244, not only grain carried to Baltimore for sale, "on carts, wagons, and railroad cars," but also all grain carried by water to the city for sale, and carried through the elevators, as it must have known that grain so carried through the elevators would be accurately weighed by a fair and impartial person standing between the seller and the buyer, and that thus the object intended by the Act would be accomplished.

3rd. That when grain had been removed from vessels and taken up into the elevators, and thence let down into the hoppers and weighed, and

after being weighed had been put into the bins of purchasers, it had been *carried through the elevators* in the contemplation of the Act, and was exempt from being again weighed by the grain weighers of the State.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*S. Teackle Wallis,* for the appellants.

*C. M. Dashiell* and *Isaac D. Jones,* for the appellee.

GRASON, J., delivered the opinion of the Court.

The question presented upon this appeal, arises upon the construction of the sixth section of the Act of Assembly of 1872, chap. 244, which is as follows: "And be it enacted that all grain arriving in the City of Baltimore, must be reported to the grain weighers' office, whether by steamers, sail vessels of all descriptions, barges, or canal boats; and it shall be the duty of the Weigher General of grain to have weighed all grain carried to said city for sale, except grain carried to the city on wagons, carts, railroad cars or through elevators; *provided* however, all grain sent to said city must be weighed by said Weigher General, if the owners of said grain shall request it to be weighed by him. It shall be the duty of the Weigher General to proceed to weigh all grain within at least two hours after the same is reported, and continue weighing until the weighing is completed; and for every failure to comply with this provision, the said Weigher General shall be liable to a penalty of twenty dollars, to be recovered before any justice of the peace in Baltimore City, one-half of the fine to go to the informer, and the other half

to the State; the suit to be brought in the name of the State. If any grain shall be brought by water to Baltimore for sale in bags, the said weighers shall weigh the said grain on board the vessel or steamboat without removing it from the bags, if the buyer and seller shall mutually agree." The question is, what is the meaning of the word "*through elevators*," as used in this section? The case was tried in the Court below on an agreed statement of facts, from which it appears that the elevators at Locust Point and Canton, were, at the date of the passage of the Act of 1872, chap. 244, and still are, the only elevators in this State, and that they are situated at the water's edge, within the limits of the City of Baltimore, and that the grain for the charges for weighing which this suit was brought, was carried to the city by water in vessels, was sold to the appellants, and by their direction taken to the elevators, and removed from the vessels by means of the elevator machinery, carried into the elevators and deposited in a large hopper situated immediately above a Fairbanks' scales, from which hopper the grain was let down into another hopper, placed upon the scales, and the grain was weighed in lots of fifty bushels of corn, at 56 lbs. per bushel, equal to 2800 lbs. of corn, and fifty bushels of wheat at 60 lbs. per bushel, equal to 3000 lbs. of wheat, until the whole of each cargo was weighed. The scales were worked by an employé of the Elevator Company, under the immediate superintendence and direction of an assistant weigher of grain, stationed there by the Weigher General, for the purpose of superintending and directing said weighing, and for taking an account of the number of bushels of grain so weighed; and after each lot of fifty bushels or less, was so weighed, it was let out of the hopper by a slide in the bottom thereof, and deposited in the purchasers' bin. It is further agreed that all of said grain was weighed under a claim of right and duty on the part of the plaintiff, as Weigher General, to weigh the same

under the provisions of the Act of 1872, chap. 244, and that said right was denied by the defendants, and that said weighing was not at the request of the defendants, but with notice to the plaintiff that they claimed that all of said grain was exempt from being so weighed by the terms of the Act, and that they would not be liable to him or his assistants for such weighing, or any part thereof. It is further agreed that all said grain was bought and sold by weight, as is the custom of the port, and that the same would have been weighed by the officers of the elevators in due course and in the same way, if the plaintiff or his assistant had not participated in weighing the same. It was further agreed that judgment should be entered *pro forma* for the plaintiff, the defendants reserving the right of appeal to this Court from said judgment.

In construing statutes the intention of the Legislature is to be carried out, and that intention is to be collected from the words of the statute, by considering every part of it, as well as the cause or necessity of making the Act, or from foreign circumstances. *Frazier vs. Warfield,* 13 *Md.,* 301. That was a case involving the rights and duties of a weigher of grain arising under the Act of 1858, chap. 256. This Court has said in that case that "the object and general purpose of the law was to provide a competent and suitable officer to inspect grain sold in the City of Baltimore, and to ascertain with fairness and accuracy the true quantity sold, by weighing and measuring; to establish a system by which the Legislature supposed the farmer would more honestly receive, and the merchant more honestly pay, exactly for what is sold and bought. The Act proposes to accomplish this result, not by introducing a new mode of weighing and measuring, but by placing between the buyer and seller an impartial officer of the law, with duties defined, and their faithful performance secured by a bond and oath." The Act of 1872, being analogous to the Act of 1858, it may be assumed

that the object to be accomplished by both was the same. But it is equally clear that the Legislature also intended to exempt some grain taken to Baltimore for sale, from the operation of the Act of 1872, and it is conceded by the counsel of the appellee, that all grain carried to the city in carts, wagons, or railroad cars, is excepted from its operation. Grain so carried to Baltimore had been exempted from being weighed by the officers of the State by previous legislation. Then the Act of 1872, excepted from its operation not only grain carried to Baltimore for sale "on carts, wagons and railroad cars," but also all grain carried to the city for sale "*through elevators.*" It is clear that the elevators at Locust Point and Canton were referred to, as they were the only elevators in the State at the time the Act was passed. It must be presumed that the Legislature had a knowledge of the subject with which it was dealing, and that it therefore knew that elevators were not vehicles for transporting grain to market, but were buildings erected at the water's edge, and supplied with machinery for the purpose of unloading and elevating grain into the buildings, *weighing,* and then depositing it in apartments in said buildings, until such time as the owners should be ready to ship it to other markets. They must also have known that, as the elevators are situated within the city limits, all grain must enter the city before reaching the elevators. We think it very clear that the Legislature meant something by the use of the words "*through elevators,*" and when considered in connection with the other words used in the sixth section, we think it equally clear that the Legislature intended to except from the operation of the Act, all grain carried by water to Baltimore for sale and carried through the elevators. It must have been known to them that when so carried through the elevators, the grain would be accurately weighed by a fair and impartial person, standing between the seller and buyer, and that thus, the object to be accom-

plished by the Act would be effected by the farmer receiving and the merchant paying exactly for what is bought and sold. This construction of the Act in nowise conflicts with any other part of the law, all of which remains in full force and effect, and can be readily carried out by the grain weighers weighing grain carried by water to the city of Baltimore, which has not been exempted from being weighed by the sixth section of the Act.

It was contended by the counsel of the appellee that, as it does not appear from the statement of facts, that the grain, mentioned in the bill of particulars, has ever been taken from the elevators, it must be presumed it still remains in them, and, therefore, that it cannot be said that it has ever passed "*through*" the elevators. To this view we cannot agree. When grain has been removed from the vessels and taken up into the elevators, and thence let down into hoppers and weighed, and after weighing has been disposed of as described in the agreed statement of facts, it has been carried "*through*" the elevators in contemplation of the Act, and is exempt from being again weighed by the grain weighers of the State.

The judgment appealed from must therefore be reversed.

*Judgment reversed.*

(Decided 27th June, 1878.)