## DIAMOND MATCH COMPANY *v.* STATE TAX COMMISSION
[No. 7, October Term, 1938.]

236

*Decided June 29th, 1938.*

The cause was argued, as of the April Term, before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Wm. Pepper Constable* and *John D. Alexander,* for the appellant.

*William L. Henderson, Assistant Attorney General,* with whom was *Herbert R. O'Conor, Attorney General,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal in this case is from the judgment of the Circuit Court of Baltimore City holding that the Diamond

Match Company, a business corporation, which had for some prior years been incorporated under the laws of the State of Maryland, but which had been duly dissolved on March 31st, 1936, is subject to a special franchise tax under the provisions of chapter 10 of the Acts of 1936, Sp. Sess., which later became operative on April 4th, 1936.

The Diamond Match Company, a domestic ordinary business corporation, was incorporated on May 7th, 1930, under the laws of the State of Maryland. The office and manufacturing operations of the corporation were in the State of New York, and its only property in the State of Maryland was its merchandise and stock in trade of the yearly average value of $31,112. The aggregate capital stock on which the franchise tax is calculated was $25,000,000. The regular franchise tax on this amount is $900, and an assessment was so entered on April 16th, 1936. The company does not dispute that it owes this tax, as the company was in existence on January 1st, 1936. On June 30th, 1936, a special or additional franchise tax of $1,800 for the year 1936 was assessed against the corporation under the provisions of chapter 10 of the acts of 1936, sec. 4, to be known as section 139A of article 81 of the Code. Thus the company, a Maryland corporation, was in being, with capital stock, and doing business in Maryland, on January 1st, 1936. By regular proceedings and in good faith, proceedings were begun on January 23rd, 1936, for the purpose of obtaining a legal dissolution of the corporation. Without any regard to the tax now in controversy, the proceedings were regularly carried forward to a dissolution of the corporation on March 31st, 1936.

At a special session of the General Assembly of Maryland, which began on March 4th, 1936, and ended on April 2nd, 1936, a special franchise tax was imposed by chapter 10 of the Acts of the Special Session of 1936, and this act became effective on April 4th, 1936, as an emergency measure. On June 30th, 1936, the company was assessed a special franchise tax in the amount of

$1,800. The company resisted this assessment on the ground that, by reason of its dissolution before the passage of the statute, the company was not liable. The legality of the assessment thus imposed depends upon whether the legislation in question is retroactive; and, if such be the construction, is the act unconstitutional because in violation of the due process clauses of the Maryland and Federal Constitutions.

The portion of the enactment which is involved in this controversy is in these words:

"139A. Every domestic corporation having capital stock and doing business in this State on the first day of January, 1936, * * * shall pay to the State Treasurer, for the use of the State, a special tax for the year 1936, for its franchise to be a corporation (in addition to the franchise tax imposed by Section 136 of this Article, and any other tax imposed by law), at the following rates, that is to say:

"On the amount of its capital stock issued, outstanding and/or subscribed for, on the first day of January, 1936: * * *

"Every domestic corporation having capital stock and doing business in this State on the first day of January, 1936, which had no part of its capital stock issued, subscribed for or outstanding on the first day of January, 1936, shall pay for such franchise an additional tax of twenty dollars. * * *

"The State Tax Commission, on or before the fifteenth day of May, 1936, shall ascertain and certify the amount of each such tax to the State Comptroller, who shall forthwith transmit to the corporations subject to the tax hereby imposed a bill for the amount of the special franchise tax hereby imposed, and such tax shall be payable to the Treasurer without interest at any time on or before the fifteenth day of June, 1936, provided the bill is mailed on or before May 15, 1936 and if the bill shall not be mailed after the fifteenth day of May, 1936, the same shall be payable without interest at any time within thirty days after the mailing of such bill."

In the passage of this enactment, the General Assembly acted under the pressure of an emergency which demanded the procuring of funds for relief of the needy. The special franchise tax was levied for the single calendar year of 1936, and not for any succeeding year. Its enactment was not for the purpose of the inauguration of a continuing change in the system or rate of taxation, but was designed to be a temporary measure to meet immediate financial obligations. The special tax ended by its imposed limitations, and was not revived in the legislation of 1937 for any purposes. It is apparent that to compute the probable net yield of this single levy of a special emergency franchise tax a certain day preceding the enactment was necessary to be taken, to ascertain the domestic corporations then in operation, so that thereby the subjects of taxation and the basis might be known to guide the legislators in fixing the rate to produce the required sum thus to be raised.

The considerations mentioned are of material significance in the ascertainment of the legislative purpose. In its approach to this question, the court will keep in mind the rule, that tax laws are to be given effect with due regard to the public necessities subserved. (*Hardesty v. Taft*, 23 Md. 512; *Union Trust Co. v. State*, 116 Md. 368, 81 A. 873; *Havre de Grace v. Bauer*, 152 Md. 521, 137 A. 344), but will, nevertheless, not give a retroactive effect to the terms employed (*Helmsley v. Hollingsworth*, 119 Md. 431, 87 A. 506; *Ellicott City v. Howard County*, 127 Md. 578, 96 A. 798; *State v. Safe Dep. & Tr. Co.*, 132 Md. 251, 103 A. 435; *Ireland v. Shipley*, 165 Md. 90, 166 A. 593; *Jones v. Gordy*, 169 Md. 173, 180 A. 272; *Dashiell v. Holland Maide Candy Shops*, 171 Md. 72, 188 A. 29), unless that is the clear and imperative legislative intent. *Alexander v. Worthington*, 5 Md. 471; *Gill v. Cacy*, 49 Md. 243; *Appeal Tax Court v. Western Maryland R. Co.*, 50 Md. 274; *Smith v. State*, 66 Md. 215, 7 A. 49; *Hooper v. Creager*, 84 Md. 195, 35 A. 967, 1103, 36 A. 359; *Commercial Building & Loan Assn. v. Mackenzie*, 85 Md. 132, 36 A. 754; *Vandiver v. Fidelity Savings*

*Bank,* 120 Md. 619, 87 A. 1086; *Overton v. Harrington,* 126 Md. 32, 94 A. 325; *Jeavons v. Pittman,* 126 Md. 650, 95 A. 1070; *Brenner v. Brenner,* 127 Md. 189, 96 A. 287; *State v. Safe Dep. & Tr. Co.,* 132 Md. 251, 103 A. 435; *State Tax Commn. v. Eureka Life Ins. Co.,* 150 Md. 380, 133 A. 63; *Dashiell v. Holland Maide Candy Shops,* 171 Md. 72, 74, 188 A. 29. Should, however, the legislative intent to give a retroactive operation to its provisions be made manifest beyond any controversy, there is no occasion for the aid of canons of construction.

The precise expression of the legislative purpose must be given its effect, if the uaw be otherwise valid. When thus declared, and, at the time specified, the corporation was subject to the tax, the obligation to pay the tax is not extinguished if, after such date of statutory imposition or levy, the corporation should cease to do business in the state, or duly undergo dissolution. The basic reason for the, franchise tax being fixed as of a certain day, and thereafter remaining payable by the corporate taxpayer as of that date, arises from the practical and economic necessity that the liability to pay shall be made certain and exempt from contingencies, so as to prevent fluctuation, doubt, and uncertainty in its collection. *In re Babcock,* 115 N. Y. 450, 22 N. E. 263; *Hopkins v. Van Wyck,* 80 Md. 7, 15, 30 A. 556.

The company concedes its liability to pay the ordinary franchise tax created by section 136 of article 81 of the Code (Supp. 1935). This tax is imposed upon domestic corporations having capital stock issued, outstanding and subscribed for on the first day of the preceding January and is payable on or before the first of August in each year succeeding the date of its incorporation. It will be observed that this tax is payable no matter whether the corporation is engaged in business or not. Since the additional particular franchise tax is not payable if the corporation be not engaged in business on January first, the ordinary franchise tax is open to an objection not available against the additional franchise.

The levy of a tax by the State is not within the inhi-

bition of the Federal Constitution merely because the statute which imposed it made it retroactive in its operation. *League v. Texas*, 184 U. S. 156, 22 S. Ct. 475, 46 L. Ed. 478; *Winona & St. Paul Land Co. v. Minnesota*, 159 U. S. 526, 16 S. Ct. 83, 40 L. Ed. 247; *Kentucky Union Co. v. Kentucky*, 219 U. S. 140, 31 S. Ct. ·171, 55 L. Ed. 137; *Seattle v. Kelleher*, 195 U. S. 351, 25 S. Ct. 44, 49 L. Ed. 232; *Leser v. Wagner*, 120 Md. 671, 87 A. 1040, affirmed in 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; *Baltimore v. Ulman*, 79 Md. 469, 30 A. 43. Nor is there in the Constitution of Maryland any provision against retrospective laws, except those which relate to the imposition of a criminal penalty. Declaration of Rights, article 17; *Niles on Maryland Constitutional Law*, pp. 37-39; *Grinder v. Nelson*, 9 Gill 299; *Harrison v. State*, 22 Md. 468. So, the levy of a franchise tax may have a retroactive effect and take effect on the basis of the issued, outstanding, and subscribed for capital stock of a domestic corporation as of a date before the day of the passage of the statute making the levy (*Kentucky Union Co. v. Kentucky*, 219 U. S. 140, 152, 153, 31 S. Ct. 171, 55 L. Ed. 137; *Billings v. United States*, 232 U. S. 261, 282, 34 S. Ct. 421, 58 L. Ed. 596; *Locke v. New Orleans*, 4 Wall. 172, 18 L. Ed. 334; *Leser v. Wagner*, 120 Md. 671, 87 A. 1040; *Wagner v. Leser*, 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; *Reinecke v. Smith*, 289 U. S. 172, 175, 53 S. Ct. 570, 572, 77 L. Ed. 1109; *United States v. Hudson*, 299 U. S. 498, 500, 57 S. Ct. 309, 81 L. Ed. 370; *Brushaber v. Union Pacific R. Co.*, 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493; *Filoli, Inc., v. Johnson*, 4 Cal. 2nd 662, 51 P. 2nd 1093; *Roth Drugs, Inc., v. Johnson*, 13 Cal. App. 2nd 720, 57 P. 2nd 1022; *Providence Institution for Savings v. Boston*, 101 Mass. 575; *Levy's Succession*, 115 La. 377, 39 So. 37, 38, 39, affirmed *Cohen v. Brewster*, 203 U. S. 543, 27 S. Ct. 174, 51 L. Ed. 310; *State v. Sessions*, 95 Kan. 272, 147 P. 789, affirmed *Chicago, R. I. & P. R. Co. v. Kansas*, 245 U. S. ·627, 38 S. Ct. 60, 62 L. Ed. 518; *Welch v. Henry*, 223 Wis. 319, 271 N W. 68, 71, 72; *State v. Bell*, 61 N. C. 76; *State v. Manhattan Silver*

*Min. Co.,* 4 Nev. 318, 333; *Carroll v. Wright,* 131 Ga. 728, 744, 63 S. E. 260, 267; *Proctor v. State,* 215 Ala. 6, 109 So. 105; *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 256, 166 A. 742; *Baltimore v. Ulman,* 79 Md. 469, 30 A. 43; *United States v. McHatton,* (D. C.) 1920, 266 Fed. 602; *Updike v. United States* (C. C. A.) 1925, 8 Fed. 2nd 913, *certiorari* denied 271 U. S. 661, 46 S. Ct. 473, 70 L. Ed. 1138; *Brady v. Anderson,* (C. C. A.) 1917, 240 Fed. 665, *certiorari* denied 244 U. S. 654, 37 S. Ct. 652, 61 L. Ed. 1373), so long as the statute does not interfere with vested rights or impair contractual obligations. *Untermyer v. Anderson,* 276 U. S. 440, 446, 48 S. Ct. 353, 354, 72 L. Ed. 645; *Blodgett v. Holden,* 275 U. S. 142, 147, 276 U. S. 594, 48 S. Ct. 105, 106, 72 L. Ed. 206; *Nichols v. Coolidge,* 274 U. S. 531, 538, 539, 47 S. Ct. 710, 712, 71 L. Ed. 1184; *Coolidge v. Long,* 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562; *State v. Safe Dep. & Tr. Co.,* 132 Md. 251, 103 A. 435.

The argument that the General Assembly did not intend to impose the special franchise tax on a corporation which was not in existence and doing business on April 4th, 1936, although in being and carrying on its corporate business in the State on January the first of that year, is met by the irrefragable fact that the legislators actually did express that very purpose in unmistakable terms. The legislative intent of the General Assembly is so patent that it may not be denied, unless the designed retroactive effect is unlawful. The company maintains that the retroactive levy for a single occasion of a special franchise tax on a corporation, which had been dissolved before the passage of the statute, is unconstitutional with respect to such a corporation, although it was in existence and engaged in business in the state within the language of the statute on the prior date designated in the statute. The company's theory is that the imposition of the tax upon such a corporation, after its dissolution before the passage of the act, is in violation of the due process clauses of article 23 of the Declaration of Rights of the Constitution of Maryland and the

Fourteenth Amendment of the Federal Constitution. U. S. Code Ann. Const. Amend. 14. The clauses are invoked on the assumption that the levy attempted was so arbitrary and capricious as to amount to a confiscation of the property of the corporation. The ground of this charge of confiscation and oppression is that the corporation "got nothing for the $1,800 tax charged against it and paid its normal franchise tax for the year beginning with January 1, 1936."

The statute declares the tax to be an annual tax for the corporation's franchise to be a corporation. Code (Supp. 1935) art. 81, sec. 136. The franchise tax thus exacted, with any increase in its rate, is not a property tax, and is not a denial of due process of law, if otherwise valid. *Schwab v. Richardson,* 263 U. S. 88, 44 S. Ct. 60, 68 L. Ed. 183; *Cooper v. United States,* 280 U. S. 409, 50 S. Ct. 164, 74 L. Ed. 516, *supra.* The added tax in the case at bar is double the amount of the usual levy. The sufficient refutation of the levy being spoliatory is found in the fact that the corporation has issued all of its 250,000 shares of no par common stock, whose value is $28,650,000. Again, the franchise tax imposed conferred on the corporation no more than the privilege of juristic personality and limited corporate liability; and both the corporation and its corporate stockholders knew, or were bound to know, that the franchise tax could be imposed, lowered, or increased, during the yearly period, in any lawful manner, by the Legislature. *Cooley on Taxation* (4th Ed.) secs. 827, 855, 858, 861; *Providence Institution for Savings v. Boston,* 101 Mass. 575, 591.

The increase in the rate of the franchise tax for a particular year was referred to the first day of January in order to make the added tax apply equally, certainly, and uniformly, to the members of the class of corporations subject to this tax. The quality of universality was thus attained by the legislation. The payment of this excise or franchise tax was a condition to the exercise of the right of the corporation to be and act as a corporation during the ensuing calendar year. The exercise

of the right, although assured by the payment of the excise tax, was a matter within the entire and sole control of the corporation. So far as the State is concerned, the corporation need not function corporately during the year, or might function throughout the whole or any part of the calendar year. In conferring the right, the State did not undertake not to change the amount of the excise tax. So, by increasing it, the corporation is not deprived of any right within the protection of constitutional law. *Supra.* The mere capacity to exist as a corporation is a franchise.

The fact that the corporation has paid the normal franchise tax does not impose upon the sovereign any obligation or duty not to increase the tax as of January the first. The necessities of the State shut out any such limitation on the power to tax. In *Cooley's Constitutional Limitations* (8th Ed.) p. 986 the author writes to this general effect: "The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it."

The additional franchise tax levied upon the aggregate of the issued, outstanding, and subscribed for capital stock of the corporation as of January first—a common day for a fiscal year to begin—was on a graduated scale, which as has been seen, is not susceptible of attack on the theory of its being confiscatory or oppressive. *Henderson Bridge Co. v. Henderson,* 173 U. S. 592, 614, 19 S. Ct. 533, 43 L. Ed. 823. As the Supreme Court of the United States has held in *Kelly v. Pittsburgh,* 104 U. S. 78, 82, 83, 26 L. Ed. 658, a tax collected for a public purpose, if short of actual spoliation, is not taking the property of the taxpayer without due process of law, the attack on the constitutionality of the levy made by the act upon the appellant must fail.

The court has had its attention called to section 91 of article 23 of the Code (Supp. 1935), under which the corporation proceeded to close its affairs and suffer dis-

solution. It was not a judicial proceeding, but one conduct in accordance with the method prescribed by the statutory law. The dissolution of the corporation was thus effected on March 31st, 1936, but subject to the legislative mandate "that the corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs." For this purpose the directors shall act, unless and until a receiver be appointed. Not only are the directors clothed with the power of discharging all existing liabilities as quoted above, but they have all the duties and liabilities imposed by section 95 of article 23, among which are to pay the corporate debts without reference to the time of their accrual due; and by the following section 96 it is declared that "the dissolution of a corporation shall not relieve its stockholders or directors or other officers from any obligations and liabilities imposed on them by law." And by subsection (6) of section 91 the directors are required to maintain in the name of the corporation a principal office with at least one resident agent in charge thereof for one year after dissolution and thereafter until the affairs of the corporation are wound up. These provisions are a complete answer to the contention that the liability for the special franchise tax imposed by a later statute than chapter 551 of the Acts of 1935 (now section 91 of article 23 of the Code) is excluded from the liabilities and obligations of the corporation. These provisions are broad, and intended to cover every liability, although of an undetermined amount, and embrace the potential obligation contingent upon a liability to pay taxes subsequently levied by statute upon an assessable basis of a precedent date. *Supra.* See article 81, section 142 (b), Code (Supp. 1935).

The affairs of the dissolved corporation are in course of liquidation, and its assets are subject to the payment of this special franchise tax before distribution may be made to the creditors and stockholders. No question of

vested rights nor contractual obligations is here involved. Since the General Assembly had the power to exact the payment of the special franchise tax whenever there was existing a domestic corporation which had capital stock issued and outstanding or subscribed for on January first, 1936, and which was doing business in this state on that day; and the company, in the instant case, is within the express language of the enactment and literally fulfils all the specified conditions for the imposition of the tax, the order of the Circuit Court of Baltimore City, from which this appeal is taken, must be affirmed.

The cases cited by the appellant are on facts which are different from those now before the court; and they have not been found in conflict with the conclusion reached on the particular facts of the present appeal. *Cooley's Constitutional Limitations* (8th Ed.) pp. 772, 773.

*Order affirmed, with costs to the appellee.*