DIANA L. COLEY, GERALD L. BASS JOHN WALTER BRYANT, RONALD C. DILTHEY, AND ALL OTHER TAXPAYERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS v. THE STATE OF NORTH CAROLINA AND NORRIS TOLSON, SECRETARY OF REVENUE, DEFENDANTS-APPELLEES

No. COA04-1141

(Filed 4 October 2005)

**1. Appeal and Error— minor violations of appellate rules—no dismissal**

Appellate review of a trial court dismissal was granted under Appellate Rule 2 despite several violations of the Appellate Rules. The violations were not substantive enough or egregious enough

for dismissal; moreover, not dismissing this case does not create an appeal or lead to examining issues not raised by appellant.

**2. Constitutional Law— income tax increase—not a retroactive tax under North Carolina Constitution**

A Session Law raising an income tax rate was not a retrospective tax on an "act previously done" in violation of N.C. Const. art. I, § 16. The action was properly dismissed under Rule 12(b)(6).

Judge CALABRIA dissenting.

Appeal by plaintiffs from order and judgment entered 6 August 2004, *nunc pro tunc* 1 July 2004, by Judge Henry V. Barnette, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 20 April 2005.

*Boyce & Isley, PLLC, by G. Eugene Boyce, R. Daniel Boyce, Philip R. Isley and Laura B. Isley, for plaintiffs-appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Kay Linn Miller Hobart and Special Deputy Attorney General Norma S. Harrell.*

McGEE, Judge.

This case challenges the constitutionality of Session Law 2001-424, under which the highest income tax rate was temporarily raised from 7.75 to 8.25 percent. 2001 N.C. Sess. Laws, ch. 424, § 34.18(a). The bill was signed into law on 26 September 2001, and the new tax rate became "effective for taxable years beginning on or after January 1, 2001[.]" *Id.* at § 34.18(b). Plaintiffs filed a class action suit against the State of North Carolina and Norris Tolson, North Carolina's Secretary of Revenue, (collectively, defendants) on 25 April 2003, seeking a declaration that Session Law 2001-424 violated Article 1, Section 16 of the North Carolina Constitution (Section 16). Plaintiffs also sought refunds of individual income taxes paid on wages, earnings, and all other taxable income for 2001.

Defendants filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on 24 June 2003. Plaintiffs filed a motion for judgment on the pleadings on 25 August 2003, and a motion for summary judgment on 5 January 2004. The trial court heard the matter on 16 January 2004. In an order filed 6 August 2004, *nunc pro tunc* 1 July

2004, the trial court denied plaintiffs' motion for summary judgment and granted defendants' motion to dismiss. Plaintiffs appeal.

I.

[1] We note several violations of the North Carolina Rules of Appellate Procedure by plaintiffs: (1) plaintiffs' brief lacks a Statement of the Facts in violation of N.C.R. App. P. 28(b)(5); (2) plaintiffs' brief lacks a Statement of the Grounds for Appellate Review in violation of N.C.R. App. P. 28(b)(4); (3) the footnotes in plaintiffs' brief and reply brief do not comply with the font requirements set out in N.C.R. App. P. 28(j)(1); and (4) plaintiffs failed to timely file an Appeal Information Statement in violation of N.C.R. App. P. 41(b)(2).

Plaintiffs' noncompliance with the rules listed above is not substantive nor egregious enough to warrant dismissal of plaintiffs' appeal. *See, e.g., N.C. Farm Bureau Mut. Ins. Co. v. Allen,* 146 N.C. App. 539, 542, 553 S.E.2d 420, 422 (2001). This Court may consider an appeal that violates the Rules of Appellate Procedure to "prevent manifest injustice." N.C.R. App. P. 2. Plaintiffs have properly assigned error and have properly argued those assignments of error. Therefore, we invoke Rule 2 and address the merits of plaintiffs' appeal. The decision by this Court not to dismiss the present case for minor rules violations does not lead us to "create an appeal for an appellant" or to examine any issues not raised by the appellant. *Viar v. N.C. Dep't of Transp.,* 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) (per curiam).

II.

[2] Plaintiffs contend that the trial court erred in granting defendants' motion to dismiss. Under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2003), a motion to dismiss is proper when a complaint fails to state a claim upon which relief can be granted. Our Supreme Court has stated that a motion to dismiss should be granted when: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cty.,* 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002); *see also Toomer v. Branch Banking & Tr. Co.,* 171 N.C. App. 58, 65, 614 S.E.2d 328, 334 (2005). Plaintiffs' complaint alleges that Session Law 2001-424, by increasing the income tax rate for the highest tax bracket, is unconstitutional under Section 16, which prohibits the retrospective taxation of

"sales, purchases, or other acts." Because we determine that Section 16 does not apply to Session Law 2001-424, we find that the trial court properly granted defendants' motion to dismiss.

### A.

The history of Section 16 begins with our Supreme Court's holding in *State v. Bell*, 61 N.C. 76 (1867) (per curiam). In *Bell*, a law had been ratified on 18 October 1865 authorizing a tax "on the amount of all purchases made in or out of the State, whether for cash or on a credit, by any merchant, etc., buying or selling goods, wares or merchandise[.]" *Id.* at 80. The tax was effective "during the twelve months next preceding the first of January, 1866." *Id.* The defendant merchant refused to pay the tax on any purchases he made prior to 18 October 1865. *Id.* at 80-81. The defendant was tried and convicted for.a violation of the law. *Id.* at 81. On appeal, the defendant argued that the tax was an *ex post facto* law. *Id.* In the alternative, defendant argued that the tax was a retrospective law and therefore was against "the spirit, if not the letter, of the Constitution." *Id.* at 82.

Our Supreme Court held that the tax was not an *ex post facto* law, since *ex post facto* laws only involve "matters of a criminal nature." *Id.* at 81-82. The law at issue did not make the defendant's actions criminal until he refused to abide by the tax, and therefore "in respect to such criminality [the law was] altogether prospective." *Id.* at 82. The Court also held that the law was not unconstitutionally retrospective. *Id.* at 85-86. The Court noted that the State has a broad and "essential" power to tax, and stated that the Court could "see nothing to prevent the people from taxing themselves, either through a convention or a legislature, in respect to property owned or a business followed anterior to the passage of the [law imposing the tax]." *Id.* at 86.

In response to *Bell*, the following provision to the North Carolina Constitution was adopted at the 1868 North Carolina Constitutional Convention: "No law taxing retrospectively sales, purchases, or other acts previously done, ought to be passed." N.C. Const. of 1868, art. I, § 32. The provision today reads: "No law.taxing retrospectively sales, purchases, or other acts previously done shall be enacted." N.C. Const. art. I, § 16.

Our Supreme Court has only twice had the opportunity to interpret this provision of our State's Constitution. In 1877, the Court struck down a tax that was enacted on 26 May 1876 and that levied a

twenty-five cent tax on each one hundred dollars of merchandise purchased during the twelve months previous to 1 May 1876. *Young v. Town of Henderson*, 76 N.C. 420, 423-24 (1877). The Court recognized that the tax, as a retrospective tax on purchases, expressly violated the North Carolina Constitution. *Id.* at 424.

The Court later examined a tax levied by this State's Unemployment Compensation Law, ch. 1, Public Laws 1936 (Extra Session), which was ratified on 16 December 1936. *Unemployment Compensation Com. v. Trust Co.*, 215 N.C. 491, 499, 2 S.E.2d 592, 598 (1939). The Unemployment Compensation Law had as its purpose, in part, "to provide 'for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.' " *Id.* at 500, 2 S.E.2d at 598 (quoting Unemployment Compensation Law § 2). The law taxed employers who "had in [their] employ on or subsequent to 1 January, 1936, one or more individuals performing services for [them] within this State." *Id.* at 500, 2 S.E.2d at 598; *see also* Unemployment Compensation Law § 19(e). If one of these employers had eight or more employees " 'in each of twenty different weeks within either the current or the preceding calendar year[,]' " the employer was subject to the tax. *Unemployment Compensation Com.*, 215 N.C. at 500, 2 S.E.2d at 598 (quoting Unemployment Compensation Law § 19(f)). The Court noted that to be an employer subject to the tax,

> it [was] not necessary that such employing unit should have had in its employ eight or more individuals in each of twenty different weeks of 1936. It [was] sufficient if it employed eight individuals in each of twenty different weeks *within the preceding calendar year*, if it continue[d] to be the employer of one or more persons during 1936. To determine the status of an [employer], in ascertaining whether it is liable for the tax, the [North Carolina Unemployment Commission][wa]s empowered to examine [the employer's] status . . . not only during 1936 but during 1935 as well.

*Id.* at 500, 2 S.E.2d at 598.

Our Supreme Court found that the tax violated the North Carolina Constitution. *Id.* at 501, 2 S.E.2d at 599. The Court found that a tax on employment or "upon the maintenance of the status of an employer" was a tax upon an act or acts. *Id.* at 501, 2 S.E.2d at 599. The Court also noted the irrelevancy of the employer's status in 1935 and 1936 to the purpose of the tax:

[S]uch unemployment as occurred during the year 1936, for which the contributions were to be made, had already occurred. The unemployed could not, under the requirements of the statute, qualify to receive compensation for their involuntary unemployment during that year. In so far as 1936 is concerned, the contributions are required for a purpose impossible to be accomplished. The "burden which now so often falls with crushing force upon the unemployed worker and his family" had already been met by those involuntarily unemployed, and there was no possibility of relief under the act, even though contributions for that year [were] required.

*Id.* at 501, 2 S.E.2d at 598-99 (quoting Unemployment Compensation Law § 2).

It is under this framework that we examine the case before us.

B.

Plaintiffs argue that Session Law 2001-424 enacted a tax on wages and other income already earned, and thus is a retroactive tax in violation of Section 16. Defendants argue in their cross assignment of error that the trial court erred in finding that Section 16 applies to Session Law 2001-424. We find that the subject of defendants' cross assignment of error is dispositive of this case.

The text of Section 16 reads, in relevant part: "No law taxing retrospectively sales, purchases, or other acts previously done shall be enacted." N.C. Const. art. I, § 16. We must determine whether the increase of an income tax rate is included within the scope of Section 16. " 'Issues concerning the proper construction of the Constitution of North Carolina "are in the main governed by the same general principles which control in ascertaining the meaning of all written instruments." ' " *Stephenson v. Bartlett*, 355 N.C. 354, 370, 562 S.E.2d 377, 389 (2002) (citations omitted). In addition,

Constitutional provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption. To ascertain the intent of those by whom the language was used, we must consider the conditions as they then existed and the purpose sought to be accomplished. Inquiry should be directed to the old law, the mischief, and the remedy. The court should place itself as nearly as possible in the position of the men who framed the instrument.

A court should look to the history, general spirit of the times, and the prior and the then existing law in respect of the subject matter of the constitutional provision under consideration, to determine the extent and nature of the remedy sought to be provided.

*Perry v. Stancil,* 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) (citations omitted); *see also State v. Webb,* 358 N.C. 92, 94, 591 S.E.2d 505, 509 (2004).

We begin by looking at the plain language of Section 16. *Martin v. State of North Carolina,* 330 N.C. 412, 416, 410 S.E.2d 474, 476 (1991). The plain language does not indicate in any way that the prohibition on retrospective taxes included a prohibition on a retrospective increase on an income tax rate. Therefore, the intent of the General Assembly, as evidenced by its choice of language, does not indicate that Section 16 applies to Session Law 2001-424.

Furthermore, the history surrounding the ratification of Section 16 does not demonstrate that the drafters intended to include income taxes within the scope of Section 16. Section 16 was enacted in response to *State v. Bell,* wherein the Court upheld a criminal conviction for the defendant-merchant's failure to pay retrospective taxes on purchases. *Bell,* 61 N.C. at 89. The historical situation behind the drafting of Section 16 involved sales and purchases, as specifically mentioned in Section 16, and did not surround the situation of an increased income tax rate, or even income taxes at all.

We also find that the doctrine of *ejusdem generis* suggests that the application of Section 16 to Session Law 2001-424 is inappropriate.

" 'In the construction of statutes, the *ejusdem generis* rule is that where general words follow a designation of particular subjects or things, the meaning of the general words will ordinarily be presumed to be, and construed as, restricted by the particular designations and as including only things of the same kind, character and nature as those specifically enumerated.' "

*Smith v. Smith,* 314 N.C. 80, 87, 331 S.E.2d 682, 686-87 (1985) (citations omitted). Under *ejusdem generis,* only terms similar to "sales" and "purchases" can be included in the definition of the term "other acts." As distinguished from a singular, distinct "sale" or "purchase," taxation on income is a complicated procedure by which net income earned over the course of a fiscal year is taxed. Furthermore, at the time Session Law 2001-424 was enacted, individuals' net income for

COLEY v. STATE

[173 N.C. App. 481 (2005)]

the year 2001 had not yet been, and could not yet be, determined. As a result, we cannot find that an increase in an income tax rate is properly included within the term "act."

Finally, we find this case to be distinguishable from *Unemployment Compensation Com.*, where our Supreme Court found that the tax at issue was a tax upon an act or acts. 215 N.C. at 501, 2 S.E.2d at 599. In *Unemployment Compensation Com.*, an entirely new tax was created. *Id.* at 499, 2 S.E.2d at 598. In addition, an employer could be taxed based on the employer's status in the year prior to that during which the statute authorizing the tax was enacted. *Id.* at 500, 2 S.E.2d at 598. The futility of such legislation was noted by the Court: "In so far as 1936 is concerned, the contributions are required for a purpose impossible to be accomplished. . . . [T]here was no possibility of relief under the act, even though contributions for that year [were] required." *Id.* at 501, 2 S.E.2d at 599.

In contrast, this case involves a new tax rate, not an entirely new tax. Moreover, the new tax rate began to apply only in the year in which the statute was enacted. At this point, neither an individual's annual income nor tax liability under the statute had yet been determined. Furthermore, the increased tax rate was not ineffectual in light of any purpose of Session Law 2001-424. We find that although an employer's status at a previous time may be correctly interpreted under *Unemployment Compensation Com.* to be within the definition of an "act," the total amount of an individual's income for a year which had not yet concluded cannot be similarly defined.

Because the increase in the income tax rate under Session Law 2001-424 is not a tax upon an act, we find that the statute is constitutional. The trial court properly granted the motion to dismiss. We therefore need not consider plaintiffs' argument that the trial court erred by denying plaintiffs' motion for summary judgment.

Affirmed.

Judge ELMORE concurs.

Judge CALABRIA dissents with a separate opinion.

CALABRIA, Judge, dissenting.

Because I believe that Session Law 2001-424 is a retrospective tax in violation of Article I, Section 16 of the North Carolina Constitution, I respectfully dissent.

Article I, Section 16 provides that, "[n]o law taxing retrospectively sales, purchases, or other acts previously done shall be enacted." The majority attempts to dismiss plaintiffs' appeal by holding that "an increase in an income tax rate is [not] properly included within the term 'act.' " While I agree that "constitutional provisions should be construed in consonance with the objects and purposes in contemplation at the time of their adoption," *Perry v. Stancil*, 237 N.C. 442, 444, 75 S.E.2d 512, 514 (1953) (citations omitted), I do not concur with the interpretation of Article I, Section 16 reached by the majority in the instant case.

While it is axiomatic that "[t]he Legislature has an unlimited right to tax all persons domiciled within the State, and all property within the State," such right only exists to the extent it "has not been limited either by express words of the State Constitution or by plain implications." *Pullen v. Commissioners*, 66 N.C. 361, 362 (1872). Prior to the adoption of Article I, Section 16, our Supreme Court, in *State v. Bell*, 61 N.C. 76 (1867), considered to what extent the North Carolina Constitution limited the legislature's enactment of not only retrospective tax laws but also any other law retrospective in nature. In *Bell*, our Supreme Court stated that with regard to retrospective statutes not applying to crimes and penalties, "[t]he omission of any such prohibition in the Constitution of the United States, and also of the State [of North Carolina], is a strong argument to show that retrospective laws, merely as such, were not intended to be forbidden." *Id.*, 61 N.C. at 83. The Court went on to hold that,

[w]ith th[e] large and essential power of taxation unrestrained, except where it may come in conflict with the Constitution of the United States, with a well established right to pass a retrospective law which is not in its nature criminal, we can see nothing to prevent the people from taxing themselves, either through a convention or a legislature, in respect to property owned or a business followed anterior to the passage of the ordinance or the statute.

*Id.*, 61 N.C. at 86.

It is certainly true, as the majority points out, that the controversy decided in *Bell* involved a criminal conviction for the defendant's failure to pay a retrospective tax on purchases. However, the ramifications of the *Bell* decision, which prompted the enactment of Article I, Section 16, were clearly broader than enabling the legislature to enact retrospective laws taxing purchases. Indeed, *Bell* expressly gave the legislature the freedom to tax the citizens of North Carolina retro-

spectively without fear of constitutional infirmity. By reviewing the legislative history that preceded the submission of Article I, Section 16 to the delegation, it is clear that the Bill of Rights Committee ("the Committee") considered the broad sweep of our Supreme Court's ruling. While the initial proposed amendments contained the phrase "nor ought any law to be made taxing sales or purchases *or transactions of any sort* made before the passage of such law," the Committee subsequently replaced "transactions of any sort" with the phrase "acts previously done." This revision recognizes an intent on the part of the Committee to expand the protections of Article I, Section 16 beyond taxes on purchases, sales, and transactions, and to prevent retrospective taxes by our legislature on all acts. This proposition is further bolstered by the placement of this provision in our State Constitution, not within Article V, containing clauses dealing with finance, but within Article I, denominated as the "Declaration of Rights." It is clear that this provision was not something to be construed narrowly but to be read in context as a part of the fundamental rights of all citizens to be free from retrospective taxation.

In any event, the cases interpreting the language of this provision support the conclusion that the term "other acts" should be read expansively and not limited in the manner proposed by the majority. In *Unemployment Compensation Com. v. Trust Co.*, 215 N.C. 491, 2 S.E.2d 592 (1939), our Supreme Court addressed the meaning of "other acts" as contained in Article I, Section 16. The tax considered by the Court in *Unemployment Compensation Com.* was essentially a tax "upon the maintenance of the status of an employer" measured by the number of persons the taxpayer employed. *Id.* In the State's brief to the Court, the Attorney General argued for the same statutory construction adopted by the majority in this case, urging that the canon of statutory construction, *ejusdem generis*, be adopted to limit the meaning of the term "other acts" to acts similar to sales or purchases. The Court rejected such a construction and stated that: "the requirement that employers make contributions 'in respect to employment' is in effect a tax upon an act or acts. If it be considered a tax upon the maintenance of the status of an employer, even then it is essentially a tax upon an act. To maintain the status of an employer one must employ and pay wages." *Id.*, 215 N.C. at 501, 2 S.E.2d at 599. In *Unemployment Compensation Com.* our Supreme Court had the opportunity to limit the phrase "other acts" and declined to do so. As such, it seems illogical to conclude that a tax based on the number of persons a taxpayer employs is any closer to a "purchase" or "sale" than is the act of earning income.

Although the majority tries to distinguish the Supreme Court's holding in *Unemployment Compensation Com.* from the facts of the instant case, its reasoning is unavailing. The majority first points out that, unlike *Unemployment Compensation Com.*, this case does not involve an entirely new tax. While this may be true, this distinction is not material to the issue in the case at bar. The issue of whether the tax is new or merely an increase in a tax rate is not in any way determinative of whether the term "other acts" encompasses a tax on income. There is no law cited by the majority that stands for the proposition, and it seems illogical to conclude that this provision would be inapplicable to a retrospective raise in the sales tax rate, requiring citizens to pay additional taxes on purchases previously made.

The majority also tries unsuccessfully to distinguish the instant case by arguing that unlike the tax at issue in *Unemployment Compensation Com.*, the tax of Session Law 2001-424 "began to apply only in the year in which the statute was enacted." However, this premise, if valid, is not determinative as to the issue of whether a tax on income can be considered a tax on an "act" under the meaning of Article I, Section 16. If taken as true, this conclusion only supports the proposition that the income tax law in the instant case is not "retrospective" within the meaning of Article I, Section 16. It does not serve to distinguish the holding of *Unemployment Compensation Com.* that the term "other acts" should be broadly defined.

Regardless of the majority's belief that the tax in the instant case is not retrospective in nature, by holding that Article I, Section 16 does not protect against *any* retrospective tax on income, the majority has opened the door for the legislature to raise the tax rate for years in which assessments and payments have clearly been made, whenever they feel a budget crisis calls for such a measure. Such a broad holding will subject the citizens of this State to arbitrary and unfair taxation that is inapposite with our nation's long history of disfavoring the retrospective application of laws and will allow our legislature unlimited authority to tax in a manner that is inconsistent with both the letter and spirit of our Constitution.

Because I believe that income taxes may be subject to the restrictions set forth in Article I, Section 16, I next address the issue of whether Session Law 2001-424 is "retrospective." Appellants contend that under the provisions of the Individual Income Tax Act they were required to "pay" taxes throughout the year pursuant to mandatory withholding and reporting statutes. As a result, appellants

argue the increased tax rate resulting from the enactment of Session Law 2001-424 represented a retrospective tax on acts previously done to the extent that it required additional taxes to be paid on income earned between 1 January 2001 and the enactment of Session Law 2001-424 on 26 September 2001.

Appellants first contend that the trial court erred in concluding that taxes can only be "paid" annually upon the filing of the 15 April tax return. North Carolina General Statutes § 105-134 (2003) provides that: "[t]he general purpose of [the Individual Income Tax Act] is to impose a tax for the use of the State government upon [] taxable income collectible annually[.]" Such tax "from the time it is due and payable, [becomes] a debt from the person . . . to the State of North Carolina." N.C. Gen. Stat. § 105-238 (2003). Under N.C. Gen. Stat. § 105-134.3 (2003), "[t]he tax imposed by [the Individual Income Tax Act] shall be assessed, collected, and paid in the taxable year following the taxable year for which the assessment is made, *except as provided to the contrary in Article 4A of this Chapter.*" Emphasis added. However, Article 4A of the Individual Tax Act creates certain mandatory requirements for employees and self-employed individuals whereby portions of income received must be withheld and remitted to the Secretary of State. Specifically, N.C. Gen. Stat. § 105-163.2 (a) requires employers to "deduct and withhold from the wages of each employee the State income taxes *payable* by the employee on the wages . . . allow[ing] for the exemptions, deductions, and credits to which the employee is entitled under Article 4[.]" Emphasis added. Employers, including those who are self-employed, are required to file returns based on these withholdings quarterly, monthly, or semi-weekly as directed by N.C. Gen. Stat. § 105-163.6, and the failure to make such returns and withholdings can result in criminal as well as civil interest penalties.

From a reading of the relevant statutes under the Individual Income Tax Act, it is clear and appellees do not dispute, that North Carolina has adopted the "pay-as-you-go" method of taxation, whereby certain residents are required to remit a portion of their income received to the State of North Carolina on a statutorily designated basis, well in advance of the actual date on which their taxes are assessed. Furthermore, although the State contends otherwise, I agree with appellants that the required withholdings under Article 4A are "payments" toward tax liability and not merely deposits. The collection statutes under Article 4A are replete with the terms "payable" and "paid" in reference to the required advance remittances. Also, the

North Carolina Department of Revenue Administrative Code expressly provides that North Carolina does not use a deposit system for income taxes withheld. 17 N.C.A.C. 6C.0201. Instead, our legislature has provided that taxes are a debt when they become due. For taxpayers who are either employees or self-employed, this debt becomes due not annually, but quarterly, monthly, or semi-weekly as provided by statute. As the employee withholding is not a deposit but rather the satisfaction of a debt, it is logical to conclude that the required remittances represent the payment of an income tax obligation or debt under the Individual Income Tax Act.

Appellants next contend that if the State of North Carolina requires them to pay their taxes in advance, and such payment was made, that any action by the legislature raising the income tax rate for taxes already paid is retrospective within the meaning of Article I, Section 16. As applied to statutes, the words "retroactive" and "retrospective" may be regarded as synonymous and may broadly be defined as having reference to a state of things existing before the act in question. *Black on Interpretation of Laws*, 247. In other words, "the application of a statute is deemed 'retroactive' or 'retrospective' when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment." *Gardner v. Gardner*, 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980). However, a statute is not unconstitutional simply because it is applied to facts which were in existence before its enactment. *Wood v. Stevens & Co.*, 297 N.C. 636, 650, 256 S.E.2d 692, 701 (1979). "Instead, a statute is impermissibly retrospective only when it interferes with rights which had vested or liabilities which had accrued prior to its passage." *Id.*

In the instant case, the tax created by our legislature immediately placed appellants in arrears on taxes already paid by increasing the rate of taxation on income earned prior to the enactment of Session Law 2001-424. By the nature of. our taxation system, taxes are required to be paid in advance of April 15 and are spent by our legislature upon such payment in advance of April 15. By creating the obligation for taxpayers to make these payments in advance, taxpayers governed by the collection statutes in Article 4A, are subject to a debt or liability that must be dispensed. Although it is true that the Individual Income Tax Act taxes individuals based on net income for a one year period, the adoption of "pay-as-you-go" taxation has effectively required taxpayers to pay taxes incrementally on income earned over smaller periods of time. By paying their remittance, the tax liability for that income earned should be deemed satisfied to the

degree a taxpayer has not underpaid based on tax statutes in effect prior to that earning period. That is to say that although the General Assembly is not prevented from levying a tax payable in the future, based upon the income of periods ending after the enactment of the levy, it may not levy a tax that alters the liabilities of taxpayers that have already accrued prior to the enactment of the statute. Such a tax in my opinion is retrospective as a matter of law and repugnant to the Constitution of this State.

As I believe that Session Law 2001-424 violates Article I, Section 16 of the North Carolina Constitution, I would reverse the trial court's order dismissing the appellants' claim and order the trial court to grant summary judgment in favor of the appellants. Therefore, I respectfully dissent.