BARBARA KATRINA HASSELL, EMPLOYEE, PLAINTIFF v. ONSLOW COUNTY BOARD OF
EDUCATION, EMPLOYER SELF-INSURED (KEY RISK MANAGEMENT SERVICES,
INC.), THIRD-PARTY ADMINISTRATOR, DEFENDANTS

No. COA06-276

(Filed 6 March 2007)

**1. Workers' Compensation— occupational disease—anxiety
disorder—findings of fact—credibility**

The Industrial Commission did not err by denying plaintiff
sixth-grade teacher's claim for workers' compensation benefits
based on her failure to show she sustained an occupational dis-
ease due to conditions and stress unique to her employment as a
teacher as evidenced by findings of fact numbered 6, 8, 11, and
12, because: (1) in regard to numbers 6 and 8, plaintiff agreed
that her stress was caused by her inability to perform in accord-
ance with the requirements of what the school was demanding
and her inability to achieve the requirements of the action plans
and the observation analysis; (2) in regard to number 11, al-
though a psychologist testified that the students' misbehavior
also caused plaintiff great apprehension, the Court of Appeals
does not have the right to weigh the evidence and decide the
issue on the basis of its weight; (3) although plaintiff contends
the commission failed to give proper weight to the testimony of
the psychologist, the Commission had grounds to discount the
psychologist's opinion with regard to causation and plaintiff's
increased risk of developing anxiety as opposed to the public
at large; and (4) there was no evidence of record that the psy-

1

chologist testified another person in the same work environment or experience as plaintiff would develop generalized anxiety disorder.

2. **Workers' Compensation— occupational disease—anxiety disorder—failure to show conditions unique to employment**

The Industrial Commission did not err by denying plaintiff sixth-grade teacher's claim for workers' compensation benefits based on her failure to show she sustained an occupational disease due to conditions and stress unique to her employment as a teacher as evidenced by findings of fact numbered 13 and 14, because: (1) there was substantial evidence of record to show that although the environment in plaintiff's classroom was stressful, such stress was not created by defendant nor was it characteristic of plaintiff's particular employment; and (2) the evidence showed that the stressful classroom environment was caused by plaintiff's inability to effectively manage her classroom.

3. **Workers' Compensation— occupational disease—anxiety disorder—failure to show employment placed at increased risk**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff sixth-grade teacher failed to prove that her position placed her at an increased risk of developing an anxiety disorder and by denying her claims for benefits, because: (1) plaintiff's anxiety disorder did not develop from causes and conditions which are characteristic of and peculiar to a particular trade, occupation, or employment; (2) it cannot be concluded under the facts of this case that plaintiff faced challenges and situations unlike those confronting the general public including other teachers; and (3) the evidence tended to establish that plaintiff herself created the stressful work environment through her inability to perform the ordinary tasks expected of her and every other teacher.

Judge WYNN dissenting.

Appeal by plaintiff from an opinion and award entered 5 October 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 12 December 2006.

HASSELL v. ONSLOW CTY. BD. OF EDUC.

[182 N.C. App. 1 (2007)]

*Ralph T. Bryant, Jr., P.A., by Ralph T. Bryant, Jr., for plaintiff-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Gary A. Scarzafava, for defendant-appellee Onslow County Board of Education.*

HUNTER, Judge.

Barbara Katrina Hassell ("plaintiff") appeals from an opinion and award of the Industrial Commission ("the Commission") denying her claim for workers' compensation benefits. The Commission determined that plaintiff's generalized anxiety disorder was not due to causes and conditions characteristic of and peculiar to her employment as a sixth-grade teacher with the Onslow County Board of Education ("defendant"). Plaintiff argues the Commission erred in certain findings of fact and erred in concluding she had failed to prove her position placed her at an increased risk of developing an occupational disease. After careful review, we affirm the opinion and award of the Commission.

On 8 June 2005, plaintiff's case came before the Commission, which found facts tending to establish the following: Plaintiff, who was fifty-six years old, worked as a school teacher for defendant from 1987 until February 2002. Plaintiff was an elementary school teacher until approximately 1996, when she became a sixth-grade teacher at Dixon Middle School in Onslow County, North Carolina. While working at Dixon Middle School, plaintiff had problems maintaining order in her classroom on a continual basis. During 2001, plaintiff experienced some type of disciplinary incident every week. Plaintiff dreaded going to work because of these disciplinary problems. Because of plaintiff's lack of classroom management, her students were disrespectful and verbally and physically harassed and intimidated her. For example, students called her "grease monkey," and used curse words towards her. Students regularly walked out of plaintiff's classroom without permission and wrote rude remarks about plaintiff in their books. Additionally, students threw spitballs and wads of paper at plaintiff. On one occasion during an assembly, plaintiff was hit in the back of her head by an object thrown by a student. As a result of that incident, plaintiff began sitting at the top bleachers of the gym with her back to the wall during assemblies.

Plaintiff referred an unusually large number of students to the principal's office and received comments from the administration re-

garding the volume of her referrals. Students and parents complained to the school administration about plaintiff's performance as a teacher. During her employment, plaintiff received negative performance reviews, resulting in four "Action Plans" intended to improve plaintiff's job performance. An Action Plan is required by law if, at any point during or at the end of the school year, a teacher ranks below standard in any of the major functions. On 25 January 2002, plaintiff entered into her fourth Action Plan with defendant. The Action Plan required plaintiff in February, March, and April 2002 to show progress toward overcoming her deficiencies and present information to show that she was attempting to comply with the Action Plan. The Action Plan had an anticipated completion date of 28 May 2002. The Action Plan addressed plaintiff's problems with her failure to follow a classroom management plan, random efforts in discipline, negative learning climate in her classroom, errors in grading practices, ineffective instructional presentation, lack of feedback to students, and numerous student and parent complaints.

Pursuant to the 25 January 2002 Action Plan, plaintiff's progress was scheduled for review at the end of February 2002, at which time plaintiff was to provide the school with evidence of her efforts to comply with the Action Plan. At a 25 February 2002 observation of her classroom by a curriculum specialist, plaintiff failed to show progress or improvement in the quality of her classroom instruction. The curriculum specialist noted that plaintiff was experiencing the same classroom problems listed in the 25 January 2002 Action Plan. Plaintiff's first deadline for submission of information to show that she was complying with the current Action Plan was 28 February 2002. Plaintiff did not submit any information to the school. Plaintiff was given a reminder that she was scheduled to meet with Lesley Eason ("Eason"), Dixon Middle School principal, at 3:15 p.m. on 28 February 2002. Rather than attend this meeting, plaintiff asked Eason for a four-day extension of the deadline. On 1 March 2002, Eason met with plaintiff and advised her that she had not documented sufficient progress and that the curriculum specialist would observe her classroom again on 4 March 2002, before discussing her observations with plaintiff. Eason told plaintiff to continue to work to demonstrate improved classroom instruction and that she would share the results of their meeting with the personnel department. However, plaintiff refused to sign a warning letter, left the school, and never returned there. On 19 April 2002, plaintiff officially resigned her position with defendant, effective 3 June 2002.

HASSELL v. ONSLOW CTY. BD. OF EDUC.

[182 N.C. App. 1 (2007)]

Plaintiff testified that she was unable to continue working at the school because of the feeling that she could no longer handle the work environment due to her stress and anxiety. Eason testified that plaintiff herself created the chaotic classroom environment and that plaintiff's lack of instructional presentation and delivery in her classroom led to many of her classroom problems. Other teachers with the same students as plaintiff did not have similar problems. Eason stated that " 'in sixteen years I had never seen a situation as bad as the situation in [plaintiff's] classroom.' "

On 2 March 2002, plaintiff was examined by Dennis Chestnut, a psychologist. Dr. Chestnut found plaintiff was experiencing a severe emotional crisis and he considered hospitalizing plaintiff. At his initial interview with plaintiff, the two major areas of concern identified were family relations and occupational issues. Dr. Chestnut diagnosed plaintiff with Generalized Anxiety Disorder. As of 6 March 2002, Dr. Chestnut medically excused plaintiff from work and stated that she was unable to return to the teaching profession. Dr. Chestnut stated that plaintiff's " 'job was driving her crazy' " and that plaintiff's total job experience was a major stressor in her life.

The Commission found that "[a]lthough plaintiff developed an anxiety disorder, her psychological condition was not the result of anything caused by defendant or because she was required to do anything unusual as a teacher." Rather, "[p]laintiff was in a stressful classroom environment that was caused by her inadequate job performance and inability to perform her job duties as a teaching professional." Based on its findings, the Commission concluded that "plaintiff's stress and anxiety disorder developed from her inability to perform her job in accordance with defendant's requirements" and that she had failed to show that she sustained an occupational disease "due to causes and conditions which are characteristic of and peculiar to her employment." The Commission entered an opinion and award denying plaintiff workers' compensation benefits. Plaintiff appeals.[1]

1. We must note that plaintiff's brief fails to comply with the North Carolina Rules of Appellate Procedure by (1) failing to include a "statement of the grounds for appellate review[,]" N.C.R. App. P. 28(b)(4); and (2) failing to include a "concise statement of the applicable standard(s) of review for each question presented[.]" N.C.R. App. P. 28(b)(6). However, we conclude that plaintiff's rule violations, while serious, are not so egregious as to warrant dismissal of the appeal. *Coley v. State*, 173 N.C. App. 481, 483, 620 S.E.2d 25, 27 (2005). Reaching the merits of this case does not create an appeal for an appellant or cause this Court to examine issues not raised by the appellant. *Id.* Defendant was given sufficient notice of the issues on appeal as evidenced by the filing of its brief thoroughly responding to plaintiff's arguments. As a result, we elect to

Plaintiff argues she sustained an occupational disease arising from her employment. An occupational disease is one "which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (2005). "The claimant bears the burden of proving the existence of an occupational disease." *Norris v. Drexel Heritage Furnishings, Inc.*, 139 N.C. App. 620, 621, 534 S.E.2d 259, 261 (2000).

While mental illness qualifies as a compensable occupational disease under appropriate circumstances, *see Smith-Price v. Charter Pines Behavioral Ctr.*, 160 N.C. App. 161, 171, 584 S.E.2d 881, 887-88 (2003), the claimant must first establish that "the mental illness or injury was due to stresses or conditions different from those borne by the general public." *Pitillo v. N.C. Dep't of Envtl. Health & Natural Res.*, 151 N.C. App. 641, 648, 566 S.E.2d 807, 813 (2002). We therefore consider whether the Commission erred in determining that plaintiff failed to prove she sustained an occupational disease due to conditions and stress unique to her employment as a teacher.

**[1]** By her first assignment of error, plaintiff argues the evidence was insufficient to support the Commission's Findings of Fact Nos. 6, 8, 11, 12, 13, and 14. Plaintiff contends the greater weight of the evidence supports alternate findings favorable to plaintiff, and that the Commission erred in failing to find such alternate findings. Plaintiff contends the flawed findings made by the Commission do not support its conclusion that plaintiff failed to prove she suffered from an occupational disease.

The standard of review upon appeal of an Industrial Commission case is well settled: "Appellate review of an opinion and award of the Commission is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Lewis v. Duke Univ.*, 163 N.C. App. 408, 412, 594 S.E.2d 100, 103 (2004); *Smith-Price*, 160 N.C. App. at 165, 584 S.E.2d at 884. This Court is bound by the Commission's findings where they are supported by any substantial evidence even where there is evidence that would have supported a finding to the contrary. *Id.*

review the merits of plaintiff's appeal pursuant to N.C.R. App. P. 2. *See Seay v. Wal-Mart Stores Inc.*, 180 N.C. App. 432, 637 S.E.2d 299 (2006) (electing to entertain appeal despite the appellant's violations of Rule 28).

Plaintiff argues the Commission erred when it found in Finding of Fact No. 6 that "[p]laintiff refused to sign a warning letter, left school and never returned to school" and by finding in Finding of Fact No. 8 that:

Plaintiff acknowledged that her stress was caused by her inability to perform her job in accordance with the requirements set by defendant, as well as her inability to achieve the requirements of the Action Plan and observational analysis. Plaintiff admitted that she did not have control of her classes, that her lesson plans and the subjects to be taught were not completed, that she had complaints from parents and students that grades were inaccurate, that she had not properly averaged students' grades, and that she had not completed the items listed on the January 25, 2002 Action Plan before she quit working for the school.

Plaintiff argues the Commission erred by finding these issues were unresolved at the time of plaintiff's last day of employment, and that the Commission should have found that all of the issues had been resolved except for students' behavioral problems in the classroom.

Plaintiff testified she had "a problem . . . maintaining order in [her] classroom" and "did not have control of [her] classes[,]" although other teachers at the school teaching the same children did not experience the behavioral problems plaintiff encountered. She also acknowledged there had been "complaints at various times since 1999 from students and parents that their grades were not accurate[,]" and that she failed to properly average the grades. The school took several measures to assist plaintiff with the situation, including implementation of an Action Plan on 25 January 2002 to focus on correcting problems in plaintiff's teaching and to help her better manage her classroom. Plaintiff met with the school principal, Eason, on 25 February 2002 to discuss the Action Plan. Plaintiff acknowledged that Eason was not satisfied with plaintiff's progress in implementing the Action Plan. Plaintiff and Eason met again on 2 March 2002. Eason asked plaintiff to "review and sign papers indicating that [plaintiff was] not progressing along the Action Plan[.]" Plaintiff refused to sign the papers and did not return to her employment after that day. She felt she "could not do [the] action plans, and . . . could not do everything else with the behavior and just life in general." Plaintiff agreed that her "stress [was] caused by [her] inability to perform in accordance with the requirements of what the school [was] demanding and [her] inability to achieve the requirements of the action plans

and the observation analysis[.]" In light of this testimony, we conclude there is substantial evidence of record to support the Commission's findings, and we overrule this assignment of error.

Plaintiff contends the Commission erred by finding in Finding of Fact No. 11 that "Dr. Chestnut explained that plaintiff's anxiety focused on her difficulty with the principal." Plaintiff argues the Commission should have found that the behavior of the children in her classroom caused her the greatest anxiety. However, plaintiff's treating psychologist, Dr. Dennis Chestnut, testified that plaintiff

> had gotten a new administrator, and she felt that the new administrator was not supportive of her; did—the new administrator did not feel that she was doing a good job, and that regardless of how hard she worked or regardless of what she did, that the administrator was going to find something wrong with it. . . . [S]he felt that not only [did] the administrator fe[el] that she was not doing a good job . . . she felt that the administrator was not supportive when she made decisions in reference to students.
>
> . . .
>
> And so that was a—what I call a second element, the—first the administrative feeling, you know, of what you're doing on the job, whether that's the right thing; then the lack of support.

Dr. Chestnut further noted that plaintiff "was constantly in fear of not doing something, not pleasing somebody; you know, that fear was there, and, you know, and it's documented that, you know, this is not satisfactory, this is not satisfactory."

Although Dr. Chestnut testified that the students' misbehavior also caused plaintiff great apprehension, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). As the Commission's finding was supported by competent evidence of record, we must overrule this assignment of error.

By further assignment of error, plaintiff contends the Commission failed to give proper weight to the testimony by Dr. Chestnut. It is well established, however, that the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Matthews v. City of Raleigh*, 160 N.C. App. 597, 600, 586 S.E.2d 829, 833 (2003). The Commission

does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible. Requiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another.

*Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116-17, 530 S.E.2d 549, 553 (2000).

Although Dr. Chestnut testified that plaintiff's employment placed her at greater risk of developing generalized anxiety, he did not identify specific factors unique to plaintiff's job that led to the development of her anxiety. There was no evidence that Dr. Chestnut reviewed plaintiff's employment records or otherwise investigated the validity of her complaints regarding the school. Dr. Chestnut explained that such investigation would contradict his primary role with plaintiff as her psychologist, which was to be supportive. The Commission therefore had grounds to discount Dr. Chestnut's opinion with regard to causation and plaintiff's increased risk of developing anxiety as opposed to the public at large, and did not err in giving little weight to Dr. Chestnut's opinion on these issues.

Plaintiff argues there was no competent evidence to support the Commission's finding that "Dr. Chestnut did not indicate, however, that another person in the same work environment or experience would develop Generalized Anxiety Disorder." Again, we must disagree with plaintiff.

In support of her position, plaintiff notes Dr. Chestnut was asked whether "another person . . . in the same school with the same students and the same principal and the same administration would result in having a psychological diagnosis[.]" He responded that "[t]hey could or they may not." This testimony does not support plaintiff's argument, however. A general question regarding whether or not another person working under similar conditions as plaintiff would "result in having a psychological diagnosis" is not the same as a specific question whether someone would develop Generalized Anxiety Disorder. Indeed, it is not at all clear what is meant by a "psychological diagnosis." Moreover, Dr. Chestnut indicated only that a person working under similar circumstances "could" have such a "psychological diagnosis."

Plaintiff also points to the following statement by Dr. Chestnut: "But I could say that if you took a person where they were constantly . . . being thrown at, that they were having materials hidden from them, they were having disparaging remarks, it is likely that they, too, would show signs of anxiety, if you take those factors." Again, however, we do not conclude that such vague statements by Dr. Chestnut indicating the possibility of some sort of anxiety on the part of a person working in plaintiff's position equates to a definite opinion that a person working under similar circumstances would develop Generalized Anxiety Disorder. We find no evidence of record that Dr. Chestnut testified another person in the same work environment or experience as plaintiff would develop Generalized Anxiety Disorder, and we overrule this assignment of error.

[2] Plaintiff contends there was no competent evidence to support Findings of Fact Nos. 13 and 14. The Commission found that:

> 13. Although plaintiff developed an anxiety disorder, her psychological condition was not the result of anything caused by defendant or because she was required to do anything unusual as a teacher. Plaintiff was in a stressful classroom environment that was caused by her inadequate job performance and inability to perform her job duties as a teaching professional. Considering all the evidence presented, the Commission finds that there was nothing unusual about plaintiff's job with defendant or what was expected of her as compared to any person similarly situated. The work plaintiff was asked to perform by defendant was the same kind of work any teacher is required to do. Plaintiff was merely asked to perform her job in the manner it should have been performed. Plaintiff was responsible for the bad environment in her classroom.

> 14. The stress caused by plaintiff's conflicts with students and parents and her concerns about being disciplined and losing her job were not shown to have been characteristic of the teaching profession as opposed to occupations in general. Plaintiff's employment as a teacher did not place her at an increased risk of developing anxiety disorder as compared to the general public not so employed. Therefore, plaintiff has not proven by the greater weight of the evidence that her anxiety disorder is a compensable occupational disease under the provisions of the Workers' Compensation Act.

Plaintiff argues the Commission should have found alternate findings favorable to her, and that "[t]he only competent evidence proves that the plaintiff's job was unusual." We do not agree.

There is substantial evidence of record to show that, although the environment in plaintiff's classroom was certainly stressful, such stress was not created by defendant, nor was it characteristic of plaintiff's particular employment. Rather, the evidence showed that the stressful classroom environment was caused by plaintiff's inability to effectively manage her classroom. Other teachers at plaintiff's school who taught the same students did not experience the disciplinary problems encountered by plaintiff. Defendant did not require plaintiff to do anything other than perform her job duties as a teaching professional. Such duties included maintaining control of the classroom learning environment, a task plaintiff unfortunately was unable to perform. Defendant attempted to intervene and assist plaintiff in her endeavors to better manage her classroom, but such attempts were ultimately unsuccessful. We conclude there was substantial evidence to support the Commission's findings that plaintiff was responsible for the stressful work environment, and that such stress was not characteristic of the teaching profession. We overrule this assignment of error.

[3] Plaintiff argues the Commission erred as a matter of law when it concluded that she had failed to prove that her position placed her at an increased risk of developing an anxiety disorder, and by denying her claim for benefits. Plaintiff contends she was subjected to an abusive and dangerous work environment, and that her anxiety disorder was an occupational disease arising from such environment. Plaintiff argues the Commission erred in concluding otherwise. We do not agree.

As noted *supra*, plaintiff has the burden of showing that her anxiety disorder arose due to stresses and conditions unique to her employment. *Pitillo*, 151 N.C. App. at 648, 566 S.E.2d at 813. Here, the Commission found, and there was substantial evidence to show, that under the circumstances presented in this case, plaintiff's anxiety disorder did not develop from "causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment[.]" N.C. Gen. Stat. § 97-53(13). Plaintiff's employment as a sixth-grade teacher did not expose her to unusual and stressful conditions, nor did defendant require her to perform any extraordinary tasks. While we acknowledge the challenges and stress teachers encounter every day in their classrooms, we cannot conclude under

the facts of this case that plaintiff faced challenges and situations unlike those confronting the general public, including other teachers. *Compare Smith-Price*, 160 N.C. App. at 171, 584 S.E.2d at 888 (affirming the Commission's finding that the claimant's job exposed her to unique stress not experienced by the general public where the claimant was a nurse working with severely mentally ill and often suicidal patients, including minor patients, and where treatment errors could and had resulted in a minor patient's death, whose death the claimant took very personally). Plaintiff asserts she was "subjected" to a dangerous and volatile work environment, but the evidence tends to establish that plaintiff herself created the stressful work environment through her inability to perform the ordinary tasks expected of her and every other teacher. Because plaintiff failed to show that her employment placed her at an increased risk of developing an occupational disease, the Commission properly denied workers' compensation benefits. We overrule this assignment of error.

In conclusion, we affirm the award and opinion of the Commission.

Affirmed.

Judge STEELMAN concurs.

Judge WYNN dissents in a separate opinion.

WYNN, Judge, dissenting.

The issue on appeal is whether a 56-year-old teacher's "generalized anxiety disorder" qualifies as an occupational disease that entitles her to workers' compensation under the North Carolina Workers Compensation Act. The teacher, Barbara Hassell, contends the Industrial Commission erred by finding that her employment at Dixon Middle School did not place her at an increased risk of developing an anxiety disorder. I agree with Ms. Hassell and therefore dissent from the majority's decision to the contrary.

As the majority observes, mental illness qualifies as a compensable occupational disease, *see Smith Price v. Charter Pines Behavioral Ctr.*, 160 N.C. App. 161, 171, 584 S.E.2d 881, 887-88 (2003) and Ms. Hassell suffered from generalized anxiety disorder. Thus, the question is whether Ms. Hassell's condition was "due to stresses or conditions different from those borne by the general public" *Pitillio*

*v. N.C. Dep't of Envt'l Health & Natural Res.*, 151 N.C. App. 641, 648, 566 S.E.2d 807, 814 (2002).

In determining that Ms. Hassell failed to make this showing, the Commission found that her anxiety centered around her principal, rather than her students, and that the defect in this work environment was caused by Ms. Hassell's own failings, rather than problems within the environment. However, the evidence does not support this finding. Rather the evidence, as relied upon by the Commission, included Dr. Chestnut's opinion that Ms. Hassell's anxiety was caused by "the *nature* of her employment" which would include her principal's lack of support. Significantly, Dr. Chestnut pointed to the totality of the pressures placed on her as the primary cause of her anxiety disorder. Indeed, the language cited by the Commission expressly noted that "she felt that the administrator was not supportive when she made decisions *in reference to students*." (Emphasis added). As Dr. Chestnut indicated, Ms. Hassell's day-to-day interaction with a student body that regularly disrespected, threatened, and assaulted her was the primary cause of her anxiety.

The Commission's also found that Ms. Hassell's condition "was not the result of anything caused by the defendant or because she was required to do anything unusual as a teacher [but was] caused by her inadequate job performance and inability to perform her duties as a teaching professional." However, the test of whether Ms. Hassell can show that her illness was due to stresses or conditions different from those borne by the general public is met "if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally. *Lewis v. Duke Univ.*, 163 N.C. App. 408, 594 S.E.2d 100 (2004) (citation omitted) (The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workman's compensation). This test is not a matter of apportioning blame between the teacher and the administration. Rather, the issue is whether unique workplace factors existed that put Ms. Hassell at greater risk for illness. Factually, the Committee heard no competent evidence that the general public faces stress or conditions on par with what Ms. Hassell saw on a daily basis—personal taunts, racially-charged invectives, workspace vandalism, and physical threats.

The Commission indicated that other teachers with some of the same students did not have the same problems as Ms. Hassell. However, no other teachers confronted a classroom like Ms. Hassell's. The only competent evidence about Ms. Hassell's classroom

indicated that it was uniquely hazardous. In fact, testimony from a substitute teacher confirmed what Ms. Hassell, her co-workers, and her principal all expressly stated: Ms. Hassell went to work in conditions that members of the average teaching public do not experience.

In sum, neither the Commissions's findings that Ms. Hassell's problems centered around her principal, nor that her problems were caused by her own "inadequate" job performance are supported by competent evidence.